# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT OWENSBORO

LOVELL JAVHON JONES                                                                PLAINTIFF

v.                                                    CIVIL ACTION NO. 4:17-CV-P123-JHM

JASON PFEIL et al.                                                       DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Plaintiff Lovell Javhon Jones, a prisoner presently incarcerated at the Fulton County Detention Center (FCDC), filed this *pro se* complaint pursuant to 42 U.S.C. § 1983 while he was incarcerated in the Henderson County Detention Center (HCDC). Subsequent to filing the complaint, Plaintiff sent four letters to the Court (DNs 7, 9, 10 & 11), which the Court construes as motions to amend the complaint. In one of the amendments filed January 11, 2018 (DN 9), Plaintiff seeks to change the name of one of the Defendants named in Plaintiff's original complaint, Bill Markwell, to William I. Markwell. The motion to amend (DN 9) is **GRANTED**. The **Clerk of Court** is **DIRECTED** to change Defendant Bill Markwell to William I. Markwell in the docket of this action. The other three motions to amend (DNs 7, 10 & 11) mostly restate allegations Plaintiff included in his original complaint. These motions to amend (DNs 7, 10 & 11) are **GRANTED**.

This matter is now before the Court for initial review of the complaint (DN 1) and two amendments (DNs 10 & 11) pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the reasons that follow, the Court will allow an excessive-force claim and a bodily-privacy claim to proceed against Defendant Stone in his individual capacity. The Court will

also allow Plaintiff to amend his failure-to-treat claims brought against Defendant "RN Kendra" in her individual capacity. All other claims and Defendants will be dismissed from this action.

## I. SUMMARY OF CLAIMS

In his complaint, Plaintiff identifies nine Defendants. The nine Defendants are identified by Plaintiff as follows: (1) Jason Pfeil, Assistant Public Advocate with the Department of Public Advocacy; (2) Tina McFarland, Supervisor at the Department of Public Advocacy; (3) William I. Markwell, the "Head Prosecutor" with the Commonwealth's Attorney's Office; (4) Kurt R. Denton, "Assistant Prosecutor" with the Commonwealth's Attorney's Office; (5) Amy Brady, the Jailer at HCDC; (6) Leslie Gibson, a Colonel at HCDC; (7) Deputy Stone, a Deputy at HCDC; (8) "RN Kendra," the "Head Nurse in Charge" at HCDC but employed by Southern Health Partners; and (9) Southern Health Partners (SHP). All Defendants are sued in their individual and official capacities. As relief, Plaintiff seeks compensatory and punitive damages. He also requests "unconditional release/sentenced overturned."

On or about May 8, 2017, Plaintiff entered a guilty plea to a Class D felony charge of criminal in possession of a forged instrument in Henderson Circuit Court. Plaintiff states that he thought the plea agreement called for 30 days incarceration and 3 years shock probation. According to Plaintiff, Defendant Pfeil represented to him that he would receive "(30) day's more in jail and being released on June 7, 2017 to start [his] (3) year's shock probation." Plaintiff states that his attorney in the criminal case, Defendant Pfeil, lied to him about the plea agreement. Plaintiff states that the plea agreement was altered after he signed it. Plaintiff states that the "shock agreement was altered by the prosecution, and [Defendant] Pfeil never told [Plaintiff] anything about any type of special conditions to be released on shock probation." Plaintiff states that he never agreed to pay $2,850.00 restitution before he could be released on

2

shock probation, and Defendant Pfeil "never told [him] that restitution had to be paid for [him] to be released on shock probation." According to Plaintiff, this "sentence of pay or stay is unlawful and wrong." Plaintiff further states that "[n]o one has ever heard of anyone having to pay restitution to get out on probation or find a job from jail to be released on shock probation." Further, Plaintiff states that Defendant Pfeil "also failed to disclose the term's and conditions of shock probation, that, Plaintiff would have to serve (5) year's on probation instead of (3) year's that [Plaintiff] agreed to." Plaintiff states that Defendant Pfeil "failed to make a reasonable investigation that is reasonably necessary for Plaintiff's defense." According to Plaintiff, Defendant Pfeil failed to get a witness statement from a witness who could show that the check had been cleared to be cashed, and he failed to "retrieve emails that shows that [Plaintiff] was mailed the check from a third party asking for money." Plaintiff states that the evidence would have shown that he was not aware of the check being fraudulent and "was not trying to deceive the bank, but protect us both from this happening." Plaintiff states that he "did not know that the check was fraudulent due to two banks clearing it." Plaintiff states that he "should have never been charged with a criminal in possession of a forged instrument 2nd degree (identity). On the police report it's a 3rd degree offence, which [Plaintiff's] attorney told [him] that's what it was up until the day of [Plaintiff's] sentencing on May 8, 2017." Plaintiff states that the result of Defendant Pfeil's actions "was a greater punishment [than] Plaintiff . . . was told he was agreeing too, and resulted in a violation of [Plaintiff's] substantial rights."

Plaintiff asserts that Defendant Pfeil provided him ineffective assistance of counsel in violation of the Sixth Amendment, was negligent in his representation of Plaintiff, induced Plaintiff to plead guilty, and deceived Plaintiff. Plaintiff states that Defendant Pfeil "stated that the prosecution is racist and a d**k, that if [Plaintiff] did not sign the plea agreement that he

3

would use cruel and unusual punishment against me at trial and would impose a excessive sentence on me." According to Plaintiff, Defendant Pfeil's "errors were so serious as to deprive me of a fair trial and fair plea agreement." Plaintiff questions how his attorney, Defendant Pfeil, could "allow the Commonwealth prosecutor to scratch out a sentence on a agreement and write one in without [Plaintiff] knowing about the altered plea before [Plaintiff] signed it." Plaintiff alleges that Defendant Pfeil conspired against him "and allowed the original plea to be altered." According to Plaintiff, Defendant Pfeil "conspired with the prosecution by allowing the plea offer to be altered and failed to tell his client."

Plaintiff states that the prosecution failed to uphold "its bargain" which violated Plaintiff's due process rights. Plaintiff states that the prosecution altered the plea agreement. He further states that Defendant Markwell refused to release Plaintiff on his June 7, 2017, release date "locking [Plaintiff] into an altered shock agreement that [Plaintiff] never saw or was told about by [his] court appointed lawyer [Defendant] Pfeil until after, [Plaintiff] signed [the] plea agreement."

According to Plaintiff, on August 7, 2017, the following occurred:

> [Plaintiff] was in court due to writing many letters and hand written motions to get this matter settled. [Plaintiff] also offered to pay $500 towards [his] restitution that day if the prosecution would honor the shock agreement and release [him]. [He] was told by [Defendant] Markwell that they would take the $500.00 towards [Plaintiff's] restitution, but [Plaintiff] need[ed] to find a job from jail before he would release [Plaintiff]. Again harsh stipulation were enforced that anyone knows can't be done. How can anyone find a job while sitting in a jail cell? Again, [Plaintiff] was refused release and [his] attorney Heather Hotson was unable to get [Defendant] Markwell to release [Plaintiff] on shock probation.

Plaintiff states that he asked Defendant Markwell "to give [him] the same chance that he was giving to everyone else who was receiving shock probation, and to be treated with the same fairness that he was giving to a certain group of people who is not the same color as me, but yet

4

their charges was much worse." Plaintiff asserts that he is "being treated differently than everyone else receiving shock probation." According to Plaintiff, on December 20, 2017, his attorney Margret Ivie tried to "get [him] released." Plaintiff states that at that time, his mother agreed to pay $700.00 to get him released, but Defendant Markwell would not release him. Plaintiff states that "Mrs. Ivie stated that [Defendant] Markwell gave her several reasons that don't make sense to why he will not agree to release [Plaintiff]." Plaintiff states that "if you take a look into everyone else from Henderson, Evansville, and surrounding area's you would see that [Defendant] Markwell is not holding anyone else in jail over a restitution payment. He is actually letting people out with worse charges than [Plaintiff]."

As to his plea agreement and failure to be released on June 7, 2017, Plaintiff asserts claims under 42 U.S.C. § 1981; 42 U.S.C. § 1983; Sections 2, 3, 4, 7, 10, and 11 of the Kentucky Constitution; and the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

Plaintiff states that on the date he was supposed to be released, Deputy Carter "abused his authority during count instead of seeing the tears in [Plaintiff's] eyes from being denied release and chose to write [Plaintiff] up instead of to try to help [Plaintiff] getting [him] kicked out of the Life Changing Program." Plaintiff states he was again written up on July 22, 2017. According to Plaintiff, some inmates threatened to do bodily harm to him and "stole a nice amount of stuff from [Plaintiff] while the Deputies had [Plaintiff] sitting up in booking. With them threatening [Plaintiff's] safety the jail staff should have removed them from the gym not [Plaintiff]." Plaintiff states that he talked to Defendant Stone about his stuff being stolen and "kept trying to explain [his] side of things." According to Plaintiff, while his hands were behind his back, Defendant Stone struck him and put him into a "chock forcing [Plaintiff] down the hall while

5

[Plaintiff's] pants was all the way down exposing [his] privates to female staff and others." Plaintiff states that all he "ever wanted was fair treatment like everyone else! Now the jail has refused [Plaintiff] to work and earn good time. . . . They claim it is due to medical reasons." Plaintiff states that he was asked by Deputy Cradock, "[h]ow do [you] expect Southern Health Partners to release [you] to work when [you] keep putting in sick calls."

Plaintiff states that he is sleeping on the floor where he has "been for most of the time here with bugs craweling on [him]." Plaintiff also states that "the health providers here Southern Health Partners [are] denying [him] medical services, refusing to check [his] blood pressure, refusing to check [his] blood sugar, and failing to obtain [his] medical records, so [he] could take all the proper medication and dosages that [he] need[s]."

Plaintiff states that he has been threatened by Defendant Gibson "to be thrown in the seg until [Plaintiff] leave[s] for expressing [his] concerns about mistreatment by her staff." Plaintiff further states that on September 6, 2017, he was "taken to traffic court about [his] fines." Plaintiff states that he told the judge in traffic court all about the wrong that was being done to him regarding his May 8, 2017, plea agreement. According to Plaintiff, when he returned to HCDC he was never given lunch that day.

## II. STANDARD OF REVIEW

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d at 608.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d at 488 (quoting *Columbia Nat. Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## III. ANALYSIS

### A. Claims against Defendants Pfeil, McFarland, Markwell, and Denton

Plaintiff alleges numerous constitutional violations and improprieties associated with his May 8, 2017, guilty plea entered in Henderson Circuit Court. Plaintiff alleges that his legal counsel was ineffective, negligent, deceived Plaintiff, altered the plea agreement without Plaintiff's consent, denied him a fair trial, improperly induced him to sign the plea agreement, and conspired with the prosecutor. Plaintiff further alleges that the prosecutor failed to uphold his end of the bargain, violated Plaintiff's due process rights, treated Plaintiff differently than others receiving shock probation, altered the plea agreement after Plaintiff signed it, and wrongly refused to release Plaintiff. Plaintiff seeks monetary damages for these alleged violations and "unconditional release/sentenced overturned."

> Under the *Heck* doctrine:
>
> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). Later, in *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005), the Supreme Court reemphasized that "a state prisoner's § 1983 action is barred (absent prior invalidation)-no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)-*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration."

As to the claims against Defendants Pfeil, McFarland, Markwell, and Denton, the prosecutors and defense counsel associated with Plaintiff's plea agreement, success as to the claims against them would necessarily demonstrate the invalidity of Plaintiff's confinement or its duration. Thus, the claims against them are barred by *Heck*.

Furthermore, to the extent Plaintiff seeks to have his guilty plea "overturned," he must seek such relief through a writ of habeas corpus. "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). A finding that these Defendants violated Plaintiff's constitutional rights in the manner he alleges would result in Plaintiff's immediate or speedier release; thus, Plaintiff's sole remedy for these claims is a writ of habeas corpus.

Accordingly, Defendants Pfeil, McFarland, Markwell, and Denton and the claims against them will be dismissed from this action.

### B. Defendant Brady

Plaintiff names Amy Brady as a Defendant in this action. However, Plaintiff makes no allegations against her in his complaint or amendments. He does identify her as the Jailer at HCDC; thus, he may be seeking to assert claims against her in her supervisory capacity over the other HCDC employee Defendants.

"It is axiomatic that a complaint under 42 U.S.C. § 1983 must show a causal connection between the named defendants and the alleged constitutional deprivation; the doctrine of *respondeat superior* has no application thereunder." *Cox v. Barksdale*, No. 86-5553,

1986 WL 18435, at *1 (6th Cir. Nov. 13, 1986) (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984); *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982)). Under 42 U.S.C. § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d at 421 ("Section 1983 liability will not be imposed solely upon the basis of respondeat superior."). Rather, a plaintiff must "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id*. Thus, for supervisors to be held liable under § 1983, they must have had personal involvement in the alleged unconstitutional conduct in order to be held liable for the conduct about which a plaintiff complains. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints." *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *see also LeMasters v. Fabian*, No. 09-702 DSD/AJB, 2009 WL 1405176, at *2 (D. Minn. May 18, 2009) ("To state an actionable civil rights claim against a government official or entity, a complaint must include specific factual allegations showing how that particular party's own *personal* acts or omissions directly caused a violation of the plaintiff's constitutional rights.") (emphasis in original).

Since Plaintiff has not set forth any allegations as to Defendant Brady, she will be dismissed from this action.

### C. Claim against Defendant Gibson

Plaintiff states that Defendant Gibson threatened to put Plaintiff in segregation if Plaintiff did not stop "expressing [his] concern about mistreatment by her staff." Although reprehensible

and not condoned, verbal abuse, harassment, and threats are insufficient to state a constitutional violation under § 1983. *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987); *see also Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) ("Verbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief."); *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (noting that "harassment and verbal abuse . . . do not constitute the type of infliction of pain that the Eighth Amendment prohibits"); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) ("[V]erbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment or idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights.").

Accordingly, Defendant Gibson and the claim against her will be dismissed.

### D. Conditions-of-Confinement Claim

In Plaintiff's complaint, he states that he is sleeping on the floor where he has "been for most of the time here with bugs crawling on [him]." Pursuant to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." The Sixth Circuit has repeatedly found Eighth Amendment claims for monetary relief precluded by 42 U.S.C. § 1997e(e) absent a showing of physical injury. *See Jennings v. Weberg*, No. 2:06-CV-235, 2007 WL 80875, at *3 (W.D. Mich. Jan. 8, 2007) (collecting cases); *see also Powell v. Washington*, No. 17-1262, 2017 WL 6422354, at *5 (6th Cir. Dec. 18, 2017) (finding that the plaintiff could not recover damages for alleged psychological injury he suffered due to being

11

confined in administrative segregation since he did not allege any physical injury from his detention); *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004) (finding that plaintiff's claim that he was uncomfortable after being sprayed with pepper spray was precluded by 42 U.S.C. § 1997e(e) since he failed to show more than a de minimis injury); *Adams v. Rockafellow*, 66 F. App'x 584, 586 (6th Cir. 2003) (affirming the district court's grant of summary judgment in favor of defendant since plaintiff failed to allege any physical injury arising out of the strip searches about which he complained); *Robinson v. Corr. Corp. of Am.*, 14 F. App'x 382, 383 (6th Cir. 2001) (affirming dismissal of claims for "emotional distress, embarrassment, humiliation, and itching" since plaintiff "suffered at most only de minimis physical injury"); *Pryor v. Cox*, No. 97-3912, 1999 WL 1253040, at *1 (6th Cir. Dec. 13, 1999) (finding plaintiff's claim of being subjected to bad food, unsanitary conditions, and excessive heat without also claiming he had suffered any physical injury as a result of these conditions was meritless).

Plaintiff has not alleged the commission of a sexual act. He has also not alleged any physical injury in connection with sleeping on the floor. Accordingly, Plaintiff's conditions-of-confinement claim will be dismissed.

### E. Claims against Defendant Stone

According to Plaintiff, some inmates threatened to do bodily harm to him and "stole a nice amount of stuff from [him] while the Deputies had [Plaintiff] sitting up in booking. With them threatening [Plaintiff's] safety the jail staff should have removed them from the gym not [Plaintiff]." Plaintiff states that he talked to Defendant Stone about his stuff being stolen and "kept trying to explain [his] side of things." According to Plaintiff, while his hands were behind his back, Defendant Stone struck him and put him into a "chock forcing [Plaintiff] down the hall

while [Plaintiff's] pants was all the way down exposing [his] privates to female staff and others." The Court construes the complaint and amendments as alleging an excessive-force claim and a bodily-privacy claim against Defendant Stone.

### 1. Official-Capacity Claims

"Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n.55 (1978)). Plaintiff's official-capacity claims against Defendant Stone are actually against his employer, Henderson County. *Id.* at 166; *see also Lambert v. Hartman*, 517 F.3d 433, 439-40 (6th Cir. 2008) (stating that civil rights suit against county clerk of courts in his official capacity was equivalent of suing clerk's employer, the county).

When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). Regarding the second issue, a municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. at 694; *Deaton v. Montgomery Cty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). The Court will first address the second issue, *i.e.*, whether Henderson County is responsible for the alleged constitutional violations.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor--or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. at 691; *see also Searcy v. City of Dayton*,

38 F.3d 282, 286 (6th Cir. 1994) ("A municipality may be held liable under § 1983 if the municipality itself caused the constitutional deprivation."). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986). "[A] plaintiff must 'identify the policy, connect the policy to the [municipality] itself and show that the particular injury was incurred because of the execution of that policy.'" *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d at 286 (quoting *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

In the instant case, Plaintiff has not alleged that a municipal policy or custom of Henderson County caused his alleged harm. As nothing in the complaint demonstrates that any purported wrongdoing occurred as a result of a policy or custom implemented or endorsed by Henderson County, the complaint fails to establish a basis of liability against Henderson County, and it fails to state a cognizable § 1983 claim.

Accordingly, the claims brought against Defendant Stone in his official capacity will be dismissed.

### 2. Individual-Capacity Claims

Upon consideration, the Court will allow an excessive-force claim and a bodily-privacy claim to proceed against Defendant Stone in his individual capacity.

### F. Failure-to-Treat Claims against Defendants "RN Kendra" and SHP

Plaintiff represents that he has a blood pressure problem and type 2 diabetes. Plaintiff states that "the health providers here Southern Health Partners [are] denying [him] medical services, refusing to check [Plaintiff's] blood pressure, refusing to check [Plaintiff's] blood sugar, and failing to obtain [his] medical records, so [Plaintiff] could take all the proper medication and dosages that [he] need[s]."

#### 1. Claims against SHP and the Official-Capacity Claims against "RN Kendra"

Plaintiff sues SHP. He also sues Defendant "RN Kendra" in her official capacity, which is the equivalent of suing SHP itself. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "The Sixth Circuit has held that the analysis that applies to a § 1983 claim against a municipality applies to a § 1983 claim against a private corporation such as Southern Health Partners." *Detwiler v. S. Health Partners*, No. 3:16-cv-P343-DJH, 2016 WL 4083465, at *2 (W.D. Ky. Aug. 1, 2016) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996)). SHP cannot be held liable on a respondeat superior basis for the actions of its employees. *Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001); *Ruley v. S. Health Partners*, No. 4:10-CV-P34-M, 2011 WL 2214998, at *4 (W.D. Ky. June 6, 2011). A private corporation such as SHP is liable under § 1983 only when an official policy or custom of the corporation causes the alleged deprivation of the constitutional right. *See Street v. Corr. Corp. of Am.*, 102 F.3d at 817.

As previously stated, "a plaintiff must 'identify the policy, connect the policy to the [municipality] itself and show that the particular injury was incurred because of the execution of that policy.'" *Garner v. Memphis Police Dep't*, 8 F.3d at 364 (quoting *Coogan v. City of Wixom*, 820 F.2d at 176). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City*

*of Dayton*, 38 F.3d at 286 (quoting *Polk Cty. v. Dodson*, 454 U.S. at 326 (citation omitted)). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. Cincinnati*, 475 U.S. at 479.

Plaintiff makes no allegation that the alleged constitutional deprivation resulted from a policy or custom of SHP. Consequently, Plaintiff fails to state a claim against SHP, and SHP and the official-capacity claims against Defendant "RN Kendra" will be dismissed.

### 2. Individual-Capacity Claims against Defendant "RN Kendra"

Plaintiff states that "the health providers here Southern Health Partners [are] denying [him] medical services, refusing to check [Plaintiff's] blood pressure, refusing to check [Plaintiff's] blood sugar, and failing to obtain [his] medical records, so [Plaintiff] could take all the proper medication and dosages that [he] need[s]." Plaintiff's allegations as to his lack of medical treatment are broad and conclusory. It is unclear what specific role, if any, Defendant "RN Kendra" played in the alleged refusals to treat Plaintiff and when the refusals took place.

"[U]nder Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA." *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). Rather than dismissing the failure-to-treat claims and Defendant "RN Kendra" at this time, the Court will give Plaintiff an opportunity to file an amendment regarding these matters.

## IV.  ORDER

For the foregoing reasons, **IT IS ORDERED** as follows:

(1)  Defendants Pfeil, McFarland, Markwell, and Denton and the claims against them are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted;

(2)  Defendant Brady is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim against her upon which relief may be granted;

(3)  Defendant Gibson and the claim against her are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted;

(4)  Plaintiff's conditions-of-confinement claim is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted;

(5)  The official-capacity claims against Defendant Stone are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted; and

(6)  The failure-to-treat claim against SHP and "RN Kendra" in her official-capacity are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

The **Clerk of Court** is **DIRECTED** to terminate Defendants Pfeil, McFarland, Markwell, Denton, Brady, Gibson, and Southern Health Partners as Defendants from the docket of this action.  The **Clerk of Court** is further **DIRECTED** to send Plaintiff the form for filing a habeas action pursuant to 28 U.S.C. § 2254, in the event he chooses to file such an action.

**IT IS ORDERED** that an excessive-force claim and a bodily-privacy claim will proceed against Defendant Stone in his individual capacity.

**IT IS FURTHER ORDERED** that **within 30 days** of entry of this Order, Plaintiff may amend his complaint to set forth more specific facts regarding his failure-to-treat claims specifically describing the action or inaction taken by Defendant "RN Kendra" or any other person he claims denied him medical treatment. Any new Defendants must be sued in their individual capacities. The **Clerk of Court** is **DIRECTED** to send to Plaintiff a 42 U.S.C. § 1983 complaint form with this case number and the word "AMENDED" affixed thereto for Plaintiff's use should he wish to amend the complaint. Once received, the Court will perform screening of the amended complaint.

**Should Plaintiff file no amended complaint within 30 days, the Court will enter an order dismissing "RN Kendra" and the failure-to-treat claims for the reasons stated herein**.

Date: March 22, 2018

                                            **Joseph H. McKinley, Jr., Chief Judge**
                                            **United States District Court**

cc: Plaintiff, *pro se*
     Defendants
4414.003